UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
RICHARD B. COHEN,                      :          15cv3154 (DLC)
                                       :
                 Plaintiff,            :          OPINION AND ORDER
                                       :
        -v-                            :
                                       :
BMW INVESTMENTS L.P.,                  :
                                       :
                 Defendant.            :
                                       :
-------------------------------------- X

DENISE COTE, District Judge:

APPEARANCES:

For the plaintiff:
Jay B. Itkowitz
Itkowitz & Harwood
305 Broadway, 7th Floor
New York, NY 10007

For the defendant:
Jason Daniel Gerstein
DLA Piper US LLP (NY)
1251 Avenue of the Americas
New York, NY 10020

     This dispute arises from a fraudulent scheme by Philip

Teplen ("Teplen") and Clifford Roth ("Roth") in which Roth and

Teplen defrauded Richard Cohen ("Cohen") of approximately $2.5

million.[1]  Cohen filed this suit against BMW Investments, L.P.

---

[1] Both Teplen and Roth are attorneys who have since been
disbarred.  Teplen was arrested for stealing client funds in
July 2015 and is currently incarcerated because he cannot pay
bail.  Roth pled guilty to federal felony charges related to
several Ponzi schemes and recently finished serving his prison
term.

("BMW") seeking $300,000 that BMW had once deposited but later retrieved from Teplen.  Cohen claims that he is entitled to the $300,000 that Teplen returned to BMW under claims of unjust enrichment or money had and received.  BMW moved to dismiss for lack of personal jurisdiction and for failure to state a claim. For the reasons that follow, BMW's motion to dismiss for lack of personal jurisdiction is denied.  Its motion to dismiss for failure to state a claim, however, is granted.  Teplen returned an amount of money to BMW that had originally belonged to BMW and that BMW had a right to recover.  Cohen has not pleaded facts sufficient to support a claim that BMW was unjustly enriched by the return of an amount of money it had given to Teplen.

## Background

The following facts are taken from the complaint or from documents integral to those claims.  Diversity jurisdiction exists here.  Cohen is domiciled in New York.  BMW is a limited partnership formed in Texas with its principal place of business there.  The general partner of BMW is BMW Ventures, LLC, a limited liability company whose sole member is Wesley J. Mahone ("Mahone"), a Texas domiciliary.

Through transactions that began in 2011, Cohen lost over $2.5 million dollars in a fraud committed by Teplen and others.

In 2011, Cohen consulted with Teplen about securing a loan for living and maintenance expenses.  Although the underlying financial transactions were complex, the upshot of the loan agreement is that Cohen only received $681,229.02 of more than $3.2 million that were disbursed purportedly on Cohen's behalf. Teplen defrauded him of the rest.

In April 2012, Cohen sued Teplen and related defendants in state court for fraud, unjust enrichment, conversion, and other causes of action arising from this fraudulent loan.  Teplen filed for Chapter 7 bankruptcy in April 2014.  Cohen and Teplen settled the state court suit and, on February 20, 2015, judgment was entered against Teplen for $3,303,528.72.  The court also found that the debt was not dischargeable in bankruptcy.

Teplen and Roth also attempted to defraud BMW.  In November 2010, BMW executed an agreement with Exousia Advanced Materials, Inc. ("Exousia"), among other corporations ("Exousia Agreement").  Roth was the CEO of Exousia and other corporations involved in this agreement.  BMW agreed to invest a $1,250,000 capital contribution with Energy Lending Group 2010, LLC ("ELG"), and the agreement included the right to convert membership in ELG into shares of common stock in Exousia.  After executing the Exousia Agreement, on Roth's advice BMW wired $300,000 to Teplen's trust account as an initial deposit on the

$1.25 million investment.  Teplen was supposed to hold this money in escrow until BMW instructed him to release the funds.

Instead of releasing the $300,000 when instructed to do so, Teplen withdrew the funds for his personal use.  In January 2011, BMW exercised its contractual rights under the Exousia Agreement to opt out of the investment and have its $300,000 deposit returned.  On April 14, 2011, Teplen returned BMW's $300,000 deposit via wire transfer.

Cohen alleges that Teplen returned BMW's $300,000 from funds that were taken from Cohen through the fraudulent loan. Cohen pleads several specific facts to support this claim.  For example, the complaint reproduces an excerpt from Teplen's January 13, 2015 deposition in the state court litigation in which he confirmed that the $300,000 used to pay BMW originally came from Cohen's loan.

Cohen filed this suit on April 22, 2015 to recover the $300,000 that Teplen returned to BMW.  His causes of action include state law claims for unjust enrichment and money had and received.  On August 11, 2015, BMW brought this motion to dismiss arguing (1) that there is no personal jurisdiction here; and (2) that Cohen fails to state a claim under Rule 12(b)(6), Fed. R. Civ. P.  The motion was fully submitted on October 2, 2015.

**Discussion**

When deciding a motion to dismiss under Rule 12(b), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  In deciding a motion to dismiss, the court considers "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference."  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted). The plaintiff attached fifteen exhibits to the complaint.

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) (citation omitted) ("Licci II").  In evaluating whether this standard is met, the pleadings and any supporting materials are construed in the light most favorable to the plaintiff.  Id.  "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted).  On the other hand,

a court "will not draw argumentative inferences in the plaintiff's favor."  In re Terrorist Attacks on September 11, 2001, 538 F.3d 71, 93 (2d Cir. 2008) (citation omitted). Furthermore, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would "lack the factual specificity necessary to confer jurisdiction." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted).

## I.   Personal Jurisdiction

There are two steps to analyzing personal jurisdiction:

> To determine personal jurisdiction over a non-domiciliary . . . [courts] first apply the forum

> state's long-arm statute.  If the long-arm statute
> permits personal jurisdiction, [courts] analyze
> whether personal jurisdiction comports with due
> process protections established under the
> Constitution.

Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir.
2015) (citation omitted); MacDermid, Inc. v. Deiter, 702 F.3d
725 (2d Cir. 2012) (using this two-step analysis in a diversity
case).  Cohen has satisfied both the state's long-arm statute
and the constitutional requirements.  Thus, there is personal
jurisdiction over BMW.

**A. New York's Long-Arm Statute**

Cohen alleges that personal jurisdiction exists over BMW
under CPLR § 302(a)(1), which provides in relevant part: "As to
a cause of action arising from any of the acts enumerated in
this section, a court may exercise personal jurisdiction over
any non-domiciliary" who "transacts any business within the
state."  To determine the existence of jurisdiction under
section 302(a)(1), "a court must decide (1) whether the
defendant transacts any business in New York and, if so, (2)
whether this cause of action arises from such a business
transaction."  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246
(2d Cir. 2007) (citation omitted).

"[S]ection 302 is a single act statute and proof of one
transaction in New York is sufficient to invoke jurisdiction,

even though the defendant never enters New York, so long as the
defendant's activities were purposeful and there is a
substantial relationship between the transaction and the claim
asserted." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d
158, 170 (2d Cir. 2010) (citation omitted). "New York
decisions, at least in their rhetoric, tend to conflate the
long-arm statutory and constitutional analyses by focusing on .
. . whether the defendant's conduct constitutes 'purposeful
availment.'" Id. at 169 (citation omitted); see Paterno v.
Laser Spine Inst., 973 N.Y.S.2d 681, 685 (2d Dep't 2013), aff'd,
24 N.Y.3d 370 (2014) ("In determining the meaning of the phrase
'transacts any business,' . . . an entity transacts business
when it purposefully avails itself of the benefits and
privileges of conducting business in New York." (citation
omitted)). "Although it is impossible to precisely fix those
acts that constitute a transaction of business . . . it is the
quality of the defendants' New York contacts that is the primary
consideration." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007).

A suit arises out of a transaction in New York "if there is
an articulable nexus, or a substantial relationship, between the
claim asserted and the actions that occurred in New York."
Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 66 (2d Cir.
2012) ("Licci I") (citation omitted). There is "no bright-line

test for determining whether the 'nexus' is present in a particular case." Id. at 67.  Rather, the "inquiry is a fact-specific one."  Id. (citation omitted).  Cases that have been dismissed for lack of this nexus arose from events that had "at best[] a tangential relationship to any contacts the defendant had with New York."  Id. (citation omitted).

Cohen has made a prima facie showing that BMW transacted business in New York and that this dispute arises out of that transaction.  Exousia and other corporations involved in the Exousia Agreement have offices in New York City.  In further support of personal jurisdiction, the complaint and its attached exhibits demonstrate that BMW (1) went to New York to negotiate the Exousia Agreement involving Roth, Teplen, Exousia, and the other corporations; (2) participated in telephone conferences with persons in New York and sent letters to New York that were related to the Exousia Agreement; (3) wired $300,000 to Teplen's escrow account in New York and sent him a letter with instructions relating to that $300,000; and (4) sent letters and emails to Teplen and other persons in New York in an effort to retrieve the $300,000 when it became clear that the money was not being used as directed.  These contacts are sufficient to satisfy CPLR § 302(a)(1).  New York courts have found that "using electronic and telephonic means to project [oneself] into

9

New York to conduct business transactions" is enough to satisfy
the long-arm statute.  Deutsche Bank Sec., Inc. v. Montana Bd.
of Investments, 7 N.Y.3d 65, 71 (2006).  BMW's actions were
"volitional acts" by which it "avail[ed] itself of the privilege
of conducting activities within the forum state," even though it
was only physically present in New York on one occasion.  C.
Mahendra (N.Y.), LLC v. Nat'l Gold & Diamond Ctr., Inc., 3
N.Y.S.3d 27, 30 (1st Dep't 2015) (citation omitted).

        This suit arises directly from BMW's contacts with New
York.  Cohen seeks to recover the $300,000 that was the subject
of the Exousia Agreement and that BMW deposited in Teplen's New
York escrow account.  Cohen's complaint is thus a direct result
of these transactions.  The "arising from" prong of § 302(a)(1)
"does not require a causal link between the defendant's New York
business activity and a plaintiff's injury," Licci II, 732 F.3d
at 168.  Although BMW's transactions with Teplen and Roth in New
York did not cause Cohen's injury, they are a but for cause of
this litigation.  This provides a sufficient relationship
between the claim and the defendant's contacts with New York.
Id.

        BMW's arguments against personal jurisdiction are not
persuasive.  BMW asserts that it did not transact business in
New York because the agreement with Exousia involved property

located in South Carolina and the corporations that were parties to the agreement are incorporated in Delaware. These facts, however, do not defeat jurisdiction because BMW negotiated the Exousia Agreement in New York and wired $300,000 to Teplen in New York pursuant to an instruction letter also sent to New York. It further wrote letters, emails, and made telephone calls to New York in order to retrieve its funds. Whether the property that was the subject of the initial agreement was in South Carolina is not dispositive for assessing the number and quality of BMW's contacts with New York before, during, and after the transaction.

BMW also argues that the current suit is not sufficiently related to the Exousia Agreement to justify specific personal jurisdiction. BMW argues that the Exousia Agreement was separate from its decision to transfer money to Teplen's trust account. Mahone asserts in a declaration that, when he came to New York to negotiate the Exousia Agreement, he met Teplen briefly but did not discuss the possibility of transferring funds to Teplen's trust account. It was only several months later that he transferred money to Teplen to hold in trust while other parties gathered financing for the agreement. This attempt to separate the June 2010 meeting in New York from the transfer of $300,000 to Teplen is misplaced. The decision to

transfer money to Teplen as a deposit on BMW's investment in the Exousia Agreement was directly related to that agreement and to BMW's contacts with New York.  Thus, all of BMW's contacts with New York related to the Exousia Agreement and transferring money to Teplen can be taken together to assess specific personal jurisdiction in this case.  The plaintiff carried his burden at this stage of showing that $300,000 returned to BMW is related to the Exousia Agreement such that it is appropriate to consider the New York connections to each of these when assessing personal jurisdiction.

Moreover, although some courts have held that "mere payment into a New York account does not alone provide a basis for New York jurisdiction," Pramer S.C.A. v. Abaplus Int'l Corp., 907 N.Y.S.2d 154, 159 (1st Dep't 2010), BMW's contacts with New York are more extensive than simply its purposeful payment to Teplen's escrow account.  See Licci v. Lebanese Canadian Bank, 20 N.Y.3d 327, 338 (2012) ("Licci III") (affirming the principle that a "defendant's use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established" is sufficient for jurisdiction "if the defendant's use of that account was purposeful" (citation omitted)).  BMW's series of New York contacts related to the

Exousia Agreement thus amounts to a transaction of business in New York under CPLR § 302(a)(1).

Finally, BMW argues in a brief footnote that, even if personal jurisdiction is proper, venue is improper because the Exousia Agreement provides that "in any action arising out of or relating to this Agreement," venue is proper exclusively in Texas.  The 2010 agreement binds only parties to that agreement, however.  Cohen was not a party to the 2010 agreement -- indeed, according to Mahone's sworn declaration, before this lawsuit he had never heard of Cohen or had any dealings with him.  Thus, the venue provision in the Exousia Agreement does not bind Cohen's choice of forum in this action.[2]

## B. Due Process Clause

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances."  Eades, 799 F.3d at 168-69 (citation omitted). Minimum contacts necessary to support specific personal jurisdiction "exist where the defendant purposefully availed

---

[2] BMW did not include Federal Rule of Civil Procedure 12(b)(3) as a basis for dismissal in its August 11 Notice of Motion.  Absent full briefing and a more developed argument, the Court does not construe this footnote as containing an alternative ground for dismissal for improper venue under Rule 12(b)(3).

itself of the privilege of doing business in the forum and could foresee being haled into court there," and the commission of "some single or occasional acts" may be enough.  Id. at 169 (citation omitted).

If there are minimum contacts, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Eades, 799 F.3d at 169 (citation omitted).  Factors in determining whether exercising jurisdiction is reasonable include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Id. (citation omitted); MacDermid, Inc., 702 F.3d at 730-31 (citation omitted) (applying the same five factors in a diversity action).  The ultimate consideration is "fair play and substantial justice."  Id. (citation omitted).

As discussed above, BMW's transaction of business in New York is sufficient to satisfy the minimum contacts prong of the due process test.  BMW purposefully availed itself of the ability to do business in New York when it negotiated the Exousia Agreement, sent emails to New York, made telephone calls here, and wired the $300,000 to Teplen.  All of these purposeful

14

contacts, along with BMW's efforts to retrieve its funds from Teplen, are sufficient to satisfy the minimum contacts requirement.

Exercising personal jurisdiction is also reasonable under the circumstances. Although the burden of litigating this case for a defendant located in Texas counsels against finding personal jurisdiction, the other factors weigh in favor of personal jurisdiction or are neutral. New York has a "manifest interest in providing effective means of redress for its residents." Chloe, 616 F.3d at 173 (citation omitted). Further, the third factor "necessarily favors" Cohen since he resides in New York and his money was taken here. Id. The fourth and fifth factors are neutral because this dispute could also be resolved in Texas, where BMW is located.

BMW makes brief and conclusory arguments that it does not have sufficient minimum contacts to satisfy due process, but BMW does not address the overall reasonableness of personal jurisdiction. Even construing BMW's arguments as "generalized complaints of inconvenience," these "do not add up to a compelling case" that jurisdiction is unreasonable. Id. (citation omitted). The Due Process Clause is therefore satisfied.

## II.  Failure to State a Claim

Cohen alleges two causes of action in this case: unjust enrichment and money had and received, which have similar elements.  The elements of an unjust enrichment claim are "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012) (citation omitted).  Unjust enrichment "is available only in unusual situations when . . . circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012). "Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  Id. at 791.

"It is well settled that the essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  Sperry v. Crompton Corp., 8 N.Y.3d 204, 215 (2007) (citation omitted).  In addition, a "plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party." Georgia Malone, 19 N.Y.3d at 516. (citation omitted).  This

requirement exists in part because unjust enrichment "is a quasi-contract claim" that contemplates "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." Id. (citation omitted). Although "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated." Id. (citation omitted).  In upholding a dismissal of an unjust enrichment claim, the New York Court of Appeals has held that a relationship is too attenuated where the parties "simply had no dealings with each other," and the complaint did not allege that the parties "had any contact regarding the purchase transaction." Id. at 517-18.  Moreover, a claim for unjust enrichment was dismissed where the "pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement." Id. at 517 (citation omitted).

The elements of money had and received are similar to the elements of unjust enrichment: "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." Middle E. Banking Co. v. State St. Bank Int'l, 821 F.2d 897, 906 (2d Cir. 1987) (citation omitted).  Like unjust

enrichment, "[a] cause of action for money had and received is one of quasi-contract." Melcher v. Apollo Med. Fund mgmt. LLC, 959 N.Y.S.2d 133, 142 (1st Dep't 2013). "It allows plaintiff to recover money which has come into the hands of the defendant impressed with a species of trust because under the circumstances it is against good conscience for the defendant to keep the money." Parsa v. State, 64 N.Y.2d 143, 148 (1984) (citation omitted).

Cohen has failed to plead that he and BMW have a sufficiently close relationship and that "equity and good conscience" permit him to recover from BMW.  On the facts alleged in the complaint, there was no relationship between Cohen and BMW of any kind prior to this litigation.  Cohen does not allege any dealings with BMW, nor does he allege actions that might lead to reliance or inducement.  The relationship between BMW and Cohen, to the extent one exists at all, is merely that they were both defrauded by Teplen and funds from a fraud against Cohen were used to repay money that rightfully belonged to BMW.  There are no facts in the complaint indicating that BMW and Cohen even knew of each other's existence prior to this litigation.  See Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011) (finding that a relationship was too attenuated for an unjust enrichment claim where the complaint

lacked allegations showing that the parties were at least aware of each other's existence).

Cohen's brief arguments that his relationship with BMW is sufficiently close to plead a claim of unjust enrichment are not persuasive.  Citing little legal authority, Cohen asserts that he and BMW share a direct relationship because BMW received Cohen's funds out of Teplen's account.  The single case[3] that Cohen cites to support this claim held that there was a sufficiently close relationship where the plaintiff's son was an attorney who stole client funds and the defendants were the clients whose money was stolen.  Cohn v. Rothman-Goodman Mgmt. Corp., 547 N.Y.S.2d 881, 882-83 (2d Dep't 1989).  The plaintiff sued the defendants on a theory of unjust enrichment after he reimbursed several escrow depositors on behalf of his son.  Id. at 883.  The relationship between the plaintiff and the defendants in Cohn is thus significantly closer than it is here,

---

[3] On September 25, 2015, after its opposition brief was filed, Cohen submitted a letter to the Court with an additional New York Supreme Court case.  Cohen v. Jacoby & Meyers, et al., 2015 WL 5703991 (N.Y. Sup. Ct. Sept. 22, 2015).  The New York Supreme Court found that another of Cohen's lawsuits against other defendants related to Teplen could go forward.  In that case, Cohen sought "return of funds by or through Teplen to the Defendant law firm."  Id.  The New York Supreme Court opinion does not provide any other description of the facts, nor does it analyze in detail the case law related to unjust enrichment. Thus, without a more developed factual or legal showing, the Court cannot readily apply the brief analysis from the Jacoby & Meyers case to the one against BMW.

where BMW did not know of Cohen's existence and the parties' individual transactions with Teplen were not related to each other.  Cohen has not pleaded any facts showing that BMW knew that the $300,000 came from Cohen's fraudulent loan or that BMW even knew of Teplen's other fraudulent transactions, with Cohen or otherwise.[4]

Taking the complaint as true, it also cannot be said that "equity and good conscience" require BMW to give the $300,000 to Cohen.  BMW indisputably had the right to recover the $300,000 pursuant to the terms of the Exousia Agreement.  BMW timely exercised its contractual rights and chose not to participate in the investment, thereby rightfully retrieving the deposit it made to Teplen's escrow account.  Cohen has not pled any facts showing that BMW knew the origins of the $300,000 when Teplen returned it or that BMW did not have a valid claim to the money at the time it sought its return.  Further, Cohen's state court judgment against Teplen was entered in February 2015, after BMW's money was returned.  Principles of equity and good conscience indicate that, four years after BMW safely escaped a fraudulent transaction with Teplen, it should not be forced to hand over its money to Cohen.  Although unjust enrichment "does

---

[4] It seems unlikely that BMW would have transacted with Teplen had it known of these other frauds.

not require the performance of any wrongful act by the enriched," <u>Cruz v. McAneney</u>, 816 N.Y.S.2d 486, 491 (2d Dep't 2006) (citation omitted), it does require that equitable principles favor disgorgement.

Cohen has not cited any legal authority or provided any meaningful analysis of why equity and good conscience favor Cohen on the facts alleged. Both parties were victims of Teplen's fraudulent scheming. Cohen does not have a greater entitlement to the $300,000 simply because, unbeknownst to BMW, Teplen allegedly returned BMW's deposit from funds deriving from Teplen's fraud on Cohen. BMW should not be punished because it succeeded in recovering its money from Teplen where Cohen did not.

BMW is thus not unjustly enriched on the facts set forth in the complaint. Principles of equity and good conscience weigh in favor of allowing BMW to keep its deposit. Because the "equity and good conscience" element is also essential to a money had and received claim, the second cause of action similarly fails.

## Conclusion

BMW's August 11, 2015 motion to dismiss is granted.  The Clerk of Court shall enter judgment for BMW and close the case.

Dated:   New York, New York
         October 30, 2015


                              _____
                                       DENISE COTE
                              United States District Judge